07-9086-am
In re Henry Zhang

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 10th day of May, two thousand ten.

PRESENT:
>      José A. Cabranes,
>      Robert D. Sack,
>      Richard C. Wesley,
>           *Circuit Judges.*



In re Henry Zhang,

>           Attorney.

07-9086-am

**ORDER OF
GRIEVANCE PANEL**

FOR HENRY ZHANG:          Lewis Tesser, Esq., and Anand Patel, Esq., New York, New York.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND **DECREED** that the report of this Court's Committee on Admissions and Grievances is adopted, although modified in the manner

described below.

By orders filed in December 2007 and March 2008, this Court referred Henry Zhang to the Court's Committee on Admissions and Grievances ("the Committee") for investigation of the matters described in those orders and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

During the Committee's proceedings, Zhang had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held on November 19, 2008. Zhang was represented during the Committee's proceedings by Lewis Tesser, Esq., and Anand Patel, Esq. Presiding over the hearing were Committee members Mary Jo White, Esq., Loretta E. Lynch, Esq., and the Honorable Howard A. Levine. In March 2009, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Zhang with a copy of the Committee's report, and Zhang responded.

In its report, the Committee concluded that there was clear and convincing evidence that Zhang had engaged in conduct warranting the imposition of discipline. See Report at 10-11. Specifically, the Committee found that Zhang had failed to comply with the Court's scheduling orders in a number of cases, resulting in their dismissal, and had filed deficient briefs in

2

two cases, *Ming Fang Lin v. Mukasey*, 07-4330-ag, and *Bao Chen v. Mukasey*, 07-1145-ag. *See id.* at 5-7, 8-10. After noting the presence of various aggravating and mitigating factors, *id.* at 7, 10, 11, the Committee recommended that Zhang be publicly reprimanded, required to attend a continuing legal education ("CLE") program on law office management, and subject to certain reporting requirements, *id.* at 11-12. In his response to the Committee's report, Zhang expressed his remorse, opined that the report was fair and the Committee's recommendation both reasonable and justified, and noted that he had already taken constructive steps to cure defects in his law practice. *See* Response at 1.

Review of this Court's docket confirms that Zhang has not defaulted in any case in this Court since his hearing before the Committee. However, the quality of Zhang's briefs remains a concern. As an initial matter, Zhang's testimony before the Committee suggests that he may not have fully accepted or understood the Court's reasons for finding that his briefs in *Ming Fang Lin* and *Bao Chen* were seriously deficient.

In both *Ming Fang Lin* and *Bao Chen*, Zhang's clients sought review of orders of the Board of Immigration Review ("BIA"). In *Ming Fang Lin*, the Court found that Zhang had "submitted a brief of poor quality that, *inter alia*, did not address the actual basis for the BIA's decision" and was largely copied and pasted

3

from the motion to reopen Zhang had made to the BIA. *Ming Fang Lin*, 07-4330-ag, 279 Fed. Appx. 35, 37 (2d Cir. May 22, 2008). Similarly, in *Bao Chen*, the Court found that Zhang had waived "any challenge to the [agency's] dispositive basis for the denial of relief," which was the immigration judge's adverse credibility determination. *Bao Chen*, 07-1145-ag, 265 Fed. Appx. 26, 27 (2d Cir. Feb. 20, 2008). Although, in his *Bao Chen* brief, Zhang "offered conclusory assertions that [his client's] testimony was 'credible and detailed,' he did not point to any errors in the [immigration judge's] findings; indeed, he did not even acknowledge in the argument section of his brief that the [immigration judge had] made an adverse credibility determination." *Id.*

At the hearing, Zhang said the following about the Court's criticism in *Bao Chen*:

> the Court [warned that] I did not discuss only one aspect of the case. I am supposed to discuss every aspect of the case but I did not discuss that part. That one really alarmed me for my brief. I think that one I learned something. In the future I will discuss every aspect even though the aspect is not relevant or quite relevant. No matter what, I'm going to discuss every part of the case.

Hearing Transcript at 104-05. Although Zhang initially stated that the Court had not criticized him in *Ming Fang Lin*, *id.* at 105, his comment was apparently made without having recently reviewed the order, and the Committee permitted Zhang to

4

supplement the record with a post-hearing submission, *id.* at 105-06. His post-hearing submission stated the following about the briefs in *Ming Fang Lin* and *Bao Chen*, and about his intended remedial measures:

> Mr. Zhang's standard practice is to review each and every brief before filing, including briefs written by outside counsel on his behalf. In [*Ming Fang Lin* and *Bao Chen*], the briefs were written by an associate whom Mr. Zhang had come to trust and rely on for preparing excellent briefs. Because he was preoccupied with other matters, Mr. Zhang did not review these briefs for substance as carefully as he should have. Mr. Zhang has taken measures to ensure that this will not happen in the future by hiring outside counsel, whose work he has full confidence in, to help prepare briefs and committing himself to personally review each and every brief to ensure that it meets the highest of standards.

Second Supplemental Submission dated Dec. 8, 2008, at page 5 of case list.

However, Zhang's remedial measures have not been entirely successful, since he has filed several deficient briefs after the date of his post-hearing submission. First, this Court explicitly criticized his briefing in three cases: *Le Shang Pan v. Holder*, 08-6169-ag, in which his brief was filed in April 2009, *Nan Chen v. Holder*, 09-1504-ag, in which his brief was filed in July 2009, and *Ren Chang Qiu v. Holder*, 09-2266-ag, in which his brief was filed in September 2009. In *Le Shang Pan*, the Court found that "there [was] nothing for [the Court] to review," since Zhang had failed to challenge the only order the

5

Court had jurisdiction to review. *Le Shang Pan*, 08-6169-ag, order filed June 20, 2009, at 2-4. The panel further stated that it was "troubled by the poor quality of Attorney Henry Zhang's representation in this case" and referred Zhang's conduct in the case to this panel. *Id.* at 4, 5. In *Nan Chen*, the Court found that Zhang had waived any challenge to "the dispositive findings underlying the agency's denial of [Nan Chen's] application for relief, but simply provide[d] several pages of boilerplate law and state[d] in conclusory fashion that [Nan Chen had] established a well founded fear of future persecution." *Nan Chen*, 09-1504-ag, order filed Jan. 7, 2010, at 3-4. In *Ren Chang Qiu*, the Court found that Zhang had failed to challenge two "key findings" of the immigration judge and that "large portions" of his brief were "excerpted from an unrelated brief" and, as a result, it contained facts and argument that were irrelevant to Ren Chang Qiu's case. *Ren Chang Qiu*, 09-2266-ag, order filed Feb. 8, 2010, at 3-4 and n.1. The panel stated that "[b]riefing of this sort is unacceptable, and represents a continuation of the trend of poor quality briefing about which Mr. Zhang has previously been warned." *Id.* at 4 n.1. A similar problem was noted in a fourth case: in *Hui Chen v. Holder*, 08-4704-ag, Zhang's brief failed to cite any record evidence supporting his argument that Hui Chen had a well-founded fear of persecution on account of his alleged resistance to family planning officials.

6

*See Hui Chen v. Holder*, 08-4704-ag, brief filed Mar. 25, 2009, order filed Aug. 12, 2009, at 4.

Second, in *Hui Chan* and a number of other cases where Zhang had represented the appellant before both the BIA and this Court, Zhang raised claims in this Court that had not been raised before the BIA, without explaining why the unexhausted claims should be considered; as a result, in all of those cases, the Court declined to address the unexhausted claims. *See Qiu Yue Huang v. Holder*, 08-2060-ag, order filed Aug. 18, 2009, at 5; *Gui Lin v. Holder*, 08-4186-ag, order filed June 19, 2009, at 3; *Hui Chen*, 08-4704-ag, order filed Aug. 12, 2009, at 4; *Huai Zhong Chen v. Holder*, 08-4864-ag, order filed Apr. 21, 2009, at 3; *Zheng Fen Ou v. Holder*, 08-4594-ag, order filed Apr. 15, 2009, at 3-4. The brief in *Qiu Yue Huang* was filed prior to the Committee's hearing but well after Zhang was notified of the Committee's investigation, while the briefs in the other cases all were filed after the Committee's hearing. *See Qiu Yue Huang*, 08-2060-ag, brief filed Aug. 20, 2008; *Gui Lin*, 08-4186-ag, brief filed Jan. 5, 2009; *Hui Chen*, 08-4704-ag, brief filed Mar. 25, 2009; *Huai Zhong Chen*, 08-4864-ag, brief filed Dec. 22, 2008; *Zheng Fen Ou*, 08-4594-ag, brief filed Jan 5, 2009. Although Zhang had not been asked to address this category of error in the present disciplinary proceedings, we nonetheless raise the exhaustion error since it concerns a fairly elementary rule of immigration

law that Zhang should have known, and raising it now serves the remedial and prophylactic purposes of this proceeding.

Finally, we note that a number of Zhang's briefs include boilerplate paragraphs concerning the Convention Against Torture ("CAT"), and language in the conclusions stating that he is entitled to CAT relief, although the briefs contain no arguments concerning any CAT claims. *See Hui Chen*, 08-4704-ag, brief filed Mar. 25, 2009, at 6-7, 14; *Hui Zhen Wang-Zhang v. Holder*, 09-1970-ag, brief filed Aug. 7, 2009, at 7-8, 12; *Kai Xing v. Holder*, 09-1779-ag, brief filed Aug. 19, 2009, at 10-11, 16; *Bin Lin Li v. Holder*, 09-0720-ag, brief filed June 23, 2009, at 9-10, 14. In all of those cases, any possible CAT claim was found waived. *See Hui Chen*, 08-4704-ag, order filed Aug. 12, 2009, at 3 n.2; *Hui Zhen Wang-Zhang*, 09-1970-ag, order filed Mar. 10, 2010, at 4 ("Although Wang-Zhang sets forth the standard for CAT relief in her brief before this Court, she does not challenge the basis of the IJ's denial of CAT relief..."); *Kai Xing*, 09-1779-ag, order filed Jan. 21, 2010, at 5; *Bin Lin Li*, 09-0720-ag, order filed Dec. 1, 2009, at 3.

The instances of misconduct found by the Committee constituted serious violations of the professional duties of diligence and competence, justifying both a public reprimand and possibly a period of suspension. On the other hand, we agree with the Committee that there are significant mitigating factors,

8

particularly Zhang's recognition of the need for changes in his practice, the improvements he has instituted, his remorse and commendable candor during these proceedings, and the serious and difficult family issues he faced during the relevant time period. We adopt in full all of the Committee's factual findings. If we had before us nothing more than the misconduct discussed in the Committee's report, we also would adopt in full all of its recommendations and not go beyond the disciplinary measures recommended by the Committee. However, Zhang's continued filing of deficient briefs leaves us with little confidence that, as things now stand, he is able to conform to expected professional norms. To protect the public, the profession, and the Court, more must be done.

Upon due consideration of the Committee's report, the underlying record, Zhang's submissions, and the additional appellate proceedings described above, it is hereby ORDERED that Zhang is PUBLICLY REPRIMANDED for the misconduct described in the Committee's report and DIRECTED to:

> (a) attend, within six months of the filing date of this order, CLE programs, found suitable by the Committee, on (i) law office management, (ii) federal appellate practice, and (iii) appellate brief writing. Zhang should submit information about proposed CLE courses directly to the Committee's secretary, who will inform him of the Committee's views. Zhang must certify his completion of the required CLE programs by sworn statement filed with both this panel and the Committee's secretary within seven days after the end of the six-month period.

9

(b) comply with the reporting requirements listed on pages 11 and 12 of the Committee's report; and

(c) not file in this Court, for a period of three years (commencing twenty-eight days from the filing date of this order), any further briefs, motions or other papers unless those documents are co-signed by another member of this Court's bar who has entered an appearance as co-counsel in the case and meets the other requirements noted in the margin.[1] If Zhang is unable to comply with this directive, he must move, within twenty-eight days of the entry of this order, to withdraw as counsel in each of his pending cases.

We realize that the preceding directives are onerous, and Zhang may have difficulty complying. However, these measures are intended to be remedial and prophylactic, not punitive. We accept the Committee's findings that Zhang was remorseful for his misconduct and that other mitigating factors existed. Moreover, we do not conclude that the new, post-hearing, misconduct was intentional or in disregard of the call for change Zhang received by way of the Committee's proceedings. But Zhang's good faith willingness to meet his professional obligations has not proved sufficient, and we hope that the directives imposed in this order are viewed by Zhang as tools for improvement, rather than

---

[1] Before entering an appearance as co-counsel to Zhang in any case, proposed co-counsel must certify, in a sworn written submission to this panel under the present docket number, that he or she (i) has not been disciplined by this or any other Court or disciplinary authority in the past five years; (ii) currently is not the subject of any such disciplinary proceedings; (iii) has read a copy of this order; and (iv) accepts full responsibility for all documents filed by Zhang in the case. An attorney unable to make the certifications described in clauses (i) and (ii) of the preceding sentence may seek a waiver of those requirements from this panel by motion filed under this docket number.

instruments of punishment.

The text of this panel's December 2007 and March 2008 orders and the Committee's report are appended to, and deemed part of, the present order for the following disclosure purposes. Zhang must disclose this order to all clients in cases currently pending in this Court and to all courts and bars of which he is currently a member, and as required by any bar or court rule or order. Furthermore, the Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Zhang, this Court's Committee on Admissions and Grievances, the attorney disciplinary committee for the New York State Appellate Division, First Department, and all other courts and jurisdictions to which this Court distributes disciplinary decisions in the ordinary course.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: _____
      Michael Zachary
      Counsel to the Grievance Panel

11

## APPENDIX 1

### Text of December 2007 order

For the reasons that follow, Henry Zhang, currently of Zhang & Associates, P.C., is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. See Second Circuit Local Rule 46(h). We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

Since March 2002, this Court has dismissed 34 of the 91 petitions for review for which Zhang was counsel of record for the petitioners, based on the petitioners' failure to comply with this Court's scheduling orders. *See* Second Circuit cases docketed under 02-4229; 02-4310; 02-4337; 02-4417; 03-4146; 03-40286; 03-40723; 03-40830; 03-40928; 03-41156; 04-0568; 04-1007; 04-2181; 04-2391; 04-2392; 04-2435; 04-3001; 04-3006; 04-3297; 04-4899; 04-5867; 04-5946; 05-0044; 05-0054; 05-0140; 05-0141; 05-0329; 05-0904; 05-1274; 05-5476; 05-55477; 05-6238; 06-3165; 06-5287. This Court's records for the cited cases do not indicate that, prior to the respective deadlines for the filing of the briefs, Zhang requested an extension of time to comply, a stay of proceedings, leave to withdraw as counsel, or withdrawal of the appeal.

Upon due consideration of the matters described above, it is ORDERED that Henry Zhang is referred to this Court's Committee on Admissions and Grievances for investigation and preparation of a report, pursuant to Federal Rule of Appellate Procedure 46, this Court's Local Rule 46(h), and the Rules of the Committee on Admissions and Grievances.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
          Michael Zachary
          Supervisory Staff Attorney
          Counsel to the Grievance Panel

**APPENDIX 2**

**Text of March 2008 order**

By order entered in December 2007, Henry Zhang was referred to this Court's Committee on Admissions and Grievances for investigation of the matters described in that order. Since that time, additional information regarding Zhang has come to the attention of this panel.

Zhang is counsel of record for the petitioner in *Jie Hin Shu v. BIA*, 04-3296-ag, an immigration-related appeal that has been delayed due to the apparent absence of the record. In January 2008, the Government filed the record and a letter explaining the filing delay. *See Jie Hin Shu v. BIA*, 04-3296-ag, letter filed Jan. 7, 2008. According to the Government and this Court's records, Zhang filed both that appeal and an appeal for Shu's wife, Hua Zhen Shu, on the same day in June 2004. *See id.*, entry for June 23, 2004; *Hua Zhen Shu v. BIA*, 04-3297-ag , entry for June 23, 2004. However, in the wife's appeal, in the section of Form C-A that reads "To your knowledge, is there any case now pending or about to be brought before this court or any other court or administrative agency which: (a) arises from substantially the same case or controversy as this appeal?", Zhang checked the box for "No." *See Jie Hin Shu v. BIA*, 04-3296-ag, attachment to letter filed Jan. 7, 2008 (Form C-A from Hua Zhen Shu appeal). In the husband's appeal, Zhang left this part of the form blank. *See id.* (Form C-A from Jie Hin Shu appeal). Neither form provided any information about the other spouse's appeal.

In August 2004, the Government filed in the wife's appeal a certified administrative record ("CAR"), which also covered the husband's appeal (since the administrative proceedings had been consolidated). Despite there being a single CAR that covered both petitioners, the appeals were never consolidated in this Court, and the Court's docket sheet for the husband's appeal does not reflect that the relevant CAR was filed in the wife's appeal. This Court subsequently dismissed the wife's appeal based on Zhang's failure to file a brief.[1] The Government did not filed the CAR in the husband's case until January 2008, apparently under the mistaken impression that the CAR it filed in the wife's case in August 2004 covered the husband's case, thereby delaying the issuance of a scheduling order until January 2008, almost three and a half years after the filing of the petition.

---

[1] This default is noted in the December 2007 referral order.

13

The documents currently before this panel, by themselves, do not allow a determination as to whether Zhang knowingly or intentionally misled the Court and/or the Government by failing to accurately and fully complete Form C-A in each appeal. We ask the Committee to make such a determination in the first instance.

Upon due consideration, it is ORDERED that the additional information described above is referred to this Court's Committee on Admissions and Grievances for its consideration in conjunction with the information provided in this panel's December 2007 referral order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By:_____/s/_____
        Michael Zachary
        Supervisory Staff Attorney
        Counsel to the Grievance Panel

14

# APPENDIX 3

## March 2009 Report of the Committee on Admissions and Grievances

## REPORT & RECOMMENDATION
### Re: In re Henry Zhang, # 07-9086-am

### I. Introduction

By Order dated December 18, 2007, and by a subsequent Order dated March 10, 2008, the United States Court of Appeals for the Second Circuit ("the Court") referred Henry Zhang to this Committee, for investigation of his conduct before the Court and for preparation of a report on whether he should be subject to disciplinary or other corrective measures.

Zhang is an active immigration practitioner before the Court, and the Court's Referral Orders raise a number of areas of concern regarding Zhang's conduct, including: (1) frequent defaults on scheduling orders in his appearances before the Court; and (2) incorrectly filed forms in *Jie Hin Shu v. BIA*, 04-3295-ag and *Hua Zhen Shu v. BIA*, 04-3287-ag, which suggested the possibility that Zhang knowingly or intentionally misled the Court and/or Government by failing to accurately and fully complete Form C-A in each appeal. Subsequent summary orders of the Court also raised concern about (3) the quality of briefs that Zhang submitted to the Court.

In light of Zhang's conduct before the Court, the Committee recommends that Zhang be publicly reprimanded for his conduct, and that he be required to complete six hours of CLE in law office management and to submit biannual reports on the functioning of his practice for the next two years. The following constitutes the Committee's report and recommendation to impose discipline on Zhang.

22884715v7

## II.     This Disciplinary Proceeding

On March 5, 2008, this Committee issued an Order to Show Cause regarding Zhang's conduct as alleged in the Court's first Referral Order. On March 26, 2008, the Committee issued an Order to Show Cause regarding Zhang's conduct as alleged in the Court's second Referral Order.

On April 4, 2008, Zhang sought an extension of thirty days for his response to the Committee. This extension was granted, and a new deadline of May 5, 2008 was set for Zhang's response to the Committee's letters. On April 22, 2008, Zhang sought an additional extension of time to respond to the Committee's Order. The deadline for his response was extended to May 19, 2008. Zhang requested a two-day extension on May 19, 2008. A final deadline for Zhang's response was set for May 21, 2008. Zhang submitted replies to each of the Committee's Orders on May 21, 2008 ("Zhang's First Response" & "Zhang's Second Response").

A hearing was held on November 19, 2008, conducted by a sub-committee consisting of Mary Jo White, Loretta E. Lynch, and the Hon. Howard A. Levine. In addition to Zhang and his counsel, one character witness for Zhang was present, Nita Dobroshi. On December 8, 2008, Zhang submitted an additional post-hearing response ("Zhang's Post-Hearing Response").

## III.     Factual Background

The following facts are taken from court records and from Zhang's written submissions and testimony. The Committee found Zhang forthcoming, and his testimony generally credible.

Zhang attended law school at Peking University in Beijing. He also received a master's degree from Peking University. He then attended law school in Canada and graduated from the University of Saskatchewan in Canada. He also graduated from the McGeorge School of Law, University of the Pacific, in Sacramento, California. Zhang was admitted to the New York bar in 2001 and was subsequently admitted to the bar of the Second Circuit on June 26, 2002. He also is admitted to the bars of the First, Third, Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits, as well as the Eastern District of New York and the Southern District of New York. He is a member in good standing of each of the above bars and has never been disciplined by any of these courts.

Zhang is the principal of a small firm, Zhang and Associates, P.C., which he started in 2001 after gaining admission to the New York bar. The firm handles immigration, commercial transactions, and small criminal matters. According to Zhang, federal appellate practice is not a significant portion of his firm's work.

2

On December 18, 2007, the Court issued an Order referring Zhang to this Committee based on his failure to comply with the Court's scheduling orders. Between November 2004 and December 2006, the Court dismissed thirty-four of the ninety-one petitions for which Zhang was the counsel of record based on Zhang's failure to comply with scheduling orders.

In a later Referral Order, the Second Circuit also raised a concern regarding Zhang's improper filing of Form C-A in two petitioners' appeals. The Court asked this Committee to consider whether Zhang knowingly or intentionally misled the Court and/or the Government by failing to accurately and fully complete Form C-A in each appeal.

The quality of briefs submitted by Zhang to the Second Circuit has been criticized in two summary orders that were issued subsequent to the Court's Referral Orders. Specifically, in *Bao Chen v. Mukasey*, 265 F. App'x 26 (2d Cir. Feb. 20, 2008), and *Ming Fang Lin v. Mukasey*, 279 F. App'x 35 (2d Cir. May 22, 2008), the Court criticized Zhang's failure to address crucial issues regarding each case and his overall deficient briefing.

Zhang has also been the subject of seven complaints filed with the Departmental Disciplinary Committee of the New York Appellate Division, First Department. Each of these complaints has related to Zhang's immigration practice. Six of these cases have been closed without findings of misconduct, while one case remains pending before the Departmental Disciplinary Committee.

## IV.   Legal Standard

Under the Rules of this Committee,

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office, or the rules of professional conduct of any other state or jurisdiction governing the attorney's conduct. An attorney may also be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

3

22884715v7

Rules of the Committee on Admissions and Grievances, Rule 4.

"A court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule." Fed. R. App. P. 46(c). "Conduct unbecoming a member of the bar" may include any conduct "contrary to professional standards that show[s] an unfitness to discharge continuing obligations to clients or courts, or conduct inimical to the administration of justice." *In re Snyder*, 472 U.S. 634, 645 (1985). For "[m]ore specific guidance," we may look to "case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *Id.* at 646 n.7.

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004), *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004), *Matter of Rabinowitz*, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993), *United States v. Song*, 902 F.2d 609 (7th Cir. 1990), *Matter of Kraft*, 543 N.Y.S.2d 449 (N.Y. App. Div. 1989), *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973). Such conduct is also sanctionable under the applicable professional rules and standards. The American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and "lack of competence." ABA Standards §§ 4.4, 4.5. The Disciplinary Rules of New York's Lawyer's Code of Professional Responsibility require that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer," D.R. 6-101(a)(3); in addition, the Code's Ethical Canons require that the lawyer should represent his or her client "zealously," Canon 7-1, and that he or she "be punctual in fulfilling all professional commitments," Canon 7-38.

"Any finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Rules of the Committee on Admissions and Grievances, Rule 7(h). Once misconduct has been established, in determining the sanction to be imposed, we should generally consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. *See* ABA Standards § 3.0. This Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Rules of the Committee on Admissions and Grievances, Rule 6.

4

22884715v7

## V.     The Alleged Misconduct

### A.     Defaults on Scheduling Orders

The evidence demonstrates that Zhang failed to comply with court scheduling orders, and failed to prosecute his clients' cases diligently. Between November 2004 and December 2006, the Court dismissed thirty-four of the ninety-one petitions for which Zhang was the counsel of record based on Zhang's failure to comply with scheduling orders. Zhang offers a variety of explanations to explain the dismissed petitions, but ultimately accepts responsibility for a majority of the defaults.[1]

With regard to fifteen of the thirty-four petitions that were dismissed for Zhang's failure to comply with the Court's scheduling orders, Zhang submits that the client instructed him to stop working on the petition. *See* Zhang's First Response at 2; Hearing Transcript at 73-74. Zhang represents that he did not know that the proper action is to file a motion to withdraw with the Second Circuit in such instances. Hearing Transcript at 74.

In another four cases, Zhang claims to have been replaced by other attorneys, who were responsible for the default. Hearing Transcript at 9, 74. Again, Zhang claims that he did not know that he should have filed a motion to withdraw in such a situation. *Id.* In two cases, *In re Min Fen Zhu*, 04-1007 and *In re Xin Fang Dong*, 02-4417, Zhang could not locate the petitioner after the petition was filed. However, he did not withdraw from these cases or inform the Court that the petitioners could not be found.

Zhang points to miscommunication as the reason for his defaults in two other cases. In one case, *In re Fang Zheng*, 02-4337, Zhang claims that the Assistant U.S. Attorney assigned to the case had promised to handle the withdrawal of the case. Zhang's First Response, Ex. 3; Hearing Transcript at 10. In another case, *Hua Zhen Shu v. BIA*, 04-3287-ag, a husband and wife's cases were not consolidated due to an incorrectly completed Form C-A filed with the Court. The wife's case was ultimately dismissed due to Zhang's failure to file a brief. This case was also the subject of a separate Referral Order by the Court, discussed below.

Zhang acknowledges that the defaults were due primarily to failure to properly oversee or track case status in at least nine of these cases. In each of the dismissed cases, Zhang submits that there was no harm to his clients as a result of his actions. However,

---

[1] It appears that two cases should not have been included in the Court's Referral Order. One case that was the subject of the Court's first Referral Order, *In re Yan Yue Lu*, 05-0054, was briefed and dismissed on the merits in December 2006. In another case, *In re Qi Xin Zheng*, 03-4146, the Court never entered a scheduling order, and the record was returned to the lower court on October 14, 2005.

5

Zhang admits that he failed to properly withdraw, or to stipulate to the dismissal of the appeal. Accordingly, even if Zhang's clients were not in fact prejudiced by his failure to file the briefs, Zhang's failure to comply with proper procedures for withdrawal or dismissal of the appeal violated the Court's scheduling orders and his obligation either to represent his clients or terminate the representation. Moreover, Zhang's conduct disrupted the Court's proceedings and burdened the Court's staff with additional work. *See Bennett v. Mukasey*, 525 F.3d 222, 225 (2d Cir. 2008); N.Y. Code D.R. 2-110(A)(2) ("A lawyer shall not withdraw from employment [without] complying with applicable laws and rules.").

In each case where the default was unintentional, Zhang has moved to reinstate. These motions were denied. Although Zhang contends that it is unlikely that the Second Circuit would have ruled favorably to those clients whose petitions were dismissed, it is unclear from the record whether some clients were prejudiced.[2]

In offering explanation for several of the defaulted cases, Zhang points to the failures of other attorneys in his office, but admits ultimate responsibility for his office's failure to handle client cases in a timely manner. *See* New York Lawyer's Code of Professional Responsibility, Disciplinary Rule 6-101(a)(3) ("A lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer."). It is evident that Zhang failed to properly supervise the work of the attorneys in his office and of the outside counsel he hired to assist with the preparation of and filing of briefs. *See* N.Y. Code D.R. 1-104(B) ("A lawyer with management responsibility in the law firm or direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the disciplinary rules."); N.Y. Code D.R. 1-104(C) ("A law firm shall adequately supervise, as appropriate, the work of partners, associates and nonlawyers who work at the firm.").

In considering Zhang's relevant state of mind, *see* ABA Standards § 3.0(b), the Committee finds Zhang's account of the personal circumstances underlying his defaults credible. In 2003, Zhang's father suffered a stroke and remained ill from 2003-2005. Zhang handled the medical arrangements for his father from the United States and on October 21, 2005, Zhang flew to Beijing, China to be with his father. Although he was scheduled to return to the United States on November 5, 2005, Zhang remained in China until late November 2005 after his father passed away to oversee funeral arrangements. Zhang left his associates in charge of client matters while he was away. Due to the nature

---

[2] In six of the defaulted cases, Zhang contends that his clients were not prejudiced because the petitioner's claim was based on forced sterilization and abortion practices directed toward the petitioner's spouse. In July 2007, the Second Circuit no longer recognized such grounds as a basis for asylum, *see Lin v. U.S. Dept. of Justice*, 494 F.3d 296, 309-10 (2d Cir. 2007), and accordingly, Zhang asserts that these petitioners' claims were meritless.

6

of his location in China during this period, Zhang was unable to make frequent phone calls to his office to check on the status of cases. Zhang alleges that three of the briefs on which he defaulted were due during the period of his trip to China, and two were due while he was preparing for this trip.

Zhang's neglect was inadvertent, the product of difficult personal circumstances and inadequate office systems for tracking cases. Since the defaults and this Committee's proceedings, Zhang has made several steps toward improving his office management. He has made personnel changes and has improved the organization of his office. He has also implemented a daily records circular within the office and changed the office's calendaring system to allow him and staff to better coordinate scheduling and workflow issues. Hearing Transcript at 58. The Committee has confirmed that since the Court's December 18, 2007 Referral Order, Zhang has not defaulted on any briefs submitted to the Court.

Both aggravating and mitigating factors are present. The aggravating factors considered by the Committee include (1) Zhang's pattern of negligence, involving multiple instances of misconduct; and (2) the vulnerability of Zhang's immigration clients. ABA Standards § 9.22 (c), (h). The mitigating factors present include (1) Zhang's absence of a prior disciplinary record;[3] (2) personal problems due to his father's sickness; (3) a good faith effort to rectify the consequences of his misconduct by filing motions to reinstate those cases that were dismissed for failure to comply with the Court's scheduling orders; (4) Zhang's cooperative attitude toward these proceedings; (5) Zhang's generally good character and reputation in the immigration bar; and (6) remorse. ABA Standards § 9.32 (a), (c), (d), (e), (g), (l). To some extent, Zhang's misconduct is mitigated by (7) the absence of a selfish motive, § 9.32 (b); however, although Zhang may not have *intended* to neglect his clients, it was Zhang's decision to greatly increase his caseload without making adequate provision to protect his clients from the risks inherent in an over-stretched practice.

B.    *Jie Hin Shu v. BIA*, 04-3295-ag and *Hua Zhen Shu v. BIA*, 04-3287-ag

The Court's second Order raised concerns regarding Zhang's filing of Form C-A in the case of *Jie Hin Shu v. BIA*, 04-3296-ag. Zhang filed an appeal in that case, and a separate appeal for Shu's wife, Hua Zhen Shu, on the same day. However, in the wife's appeal, on Form C-A, in the section of the form that reads "To your knowledge, is there any case now pending or about to be brought before this court or any other court or administrative agency which: (a) arises from substantially the same case or controversy as this appeal?", Zhang checked the box for "No." *See Jie Hin Shu v. BIA*, 04-3296-ag,

---

[3] Six of the seven complaints regarding Zhang that were filed with the Departmental Disciplinary Committee of the New York Appellate Division, First Department, have been dismissed. One remains pending currently.

7

attachment to letter filed Jan. 7, 2008 (Form C-A from Hua Zhen Shu appeal). In the husband's appeal, Zhang left this part of the form blank. *See id.* (Form C-A from Jie Hin Shu appeal). In neither form did Zhang provide information about the other spouse's appeal. As a result, the cases were never consolidated.

Because the cases were never consolidated in the Second Circuit, the Court's docket sheet for the husband's appeal did not reflect that the relevant administrative record covered both petitioners. The Court subsequently dismissed the wife's appeal based on Zhang's failure to file a brief. The Government did not file the administrative record in the husband's case until January 2008, under the mistaken impression that the record filed in the wife's case in August 2004 covered the husband's case.

Zhang responded that his failure to file the Form C-A correctly was a mistake. He noted that Form C-A asks if the cases are "substantially" the same. He considered the cases, which were based on the same administrative record, to be "exactly" the same, and believed they would automatically be treated as one case. *See* Zhang's Second Response at 1; Hearing Transcript at 86-87. Zhang also provided evidence that he had filed Form C-A in a similar manner in another case in which he filed appeals for a husband and wife. *See* Zhang's Second Response, Ex. 2.

Although Zhang filed Form C-A incorrectly and caused a substantial delay in Jie Hin Shu's case, no clear evidence shows that Zhang knowingly or intentionally misled the Court or the Government by failing to accurately and fully complete Form C-A in each appeal. Based on Zhang's testimony at the hearing, the Committee finds it unlikely that Zhang intended to mislead anyone or cause any harm by filing these forms. *See* Hearing Transcript at 86-87.

## C. **Deficient Briefing**

In two other cases that were not the subject of the Referral Orders, the Court expressed concern with the poor quality of the briefs filed by Zhang in these matters. Zhang's briefing was criticized in the summary orders associated with these cases, *Bao Chen v. Gonzales*, 07-1145, and *Ming Fang Lin v. Mukasey*, 07-4330.

In *Bao Chen*, the Court noted that the petitioner's brief was seriously deficient for failing to address the adverse credibility determination of the immigration judge. The Court stated:

> A petitioner's attorney must "include his most cogent arguments in his opening brief, upon pain of otherwise finding them waived." *McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005). Here, Chen failed to address the IJ's adverse credibility determination in his brief to this Court. Although he offered conclusory assertions that his

8

testimony was "credible and detailed," he did not point to any errors in the IJ's findings; indeed, he did not even acknowledge in the argument section of his brief that the IJ made an adverse credibility determination.

\*\*\*

In light of the waiver of any challenge to the dispositive basis for the denial of relief, we must note that the Petitioner's brief is seriously deficient. To "argue" that an asylum applicant is eligible for relief without addressing an adverse credibility determination violates Federal Rule of Appellate Procedure 28(a)(9), which requires an appellant's brief to address all issues and explain the reasons for its contentions. Counsel is warned that future failure to comply with the Federal Rules of Appellate Procedure may result in discipline.

*Bao Chen v. Mukasey*, 265 F. App'x 26, 27 (2d Cir. Feb. 20, 2008).

In *Lin*, the Court noted that Zhang's brief did not address the actual basis for the BIA's decision:

> Finally, we are troubled by the poor quality of Lin's brief in this case. Attorney Henry Zhang represented Lin both before the agency and in this Court. Here, Zhang submitted a brief of poor quality that, inter alia, did not address the actual basis for the BIA's decision. Indeed, a large part of Lin's brief was merely copied and pasted from Lin's motion to reopen. Accordingly, we refer the matter of Zhang's conduct in this case to this Court's Grievance Panel for further consideration.

*Ming Fang Lin v. Mukasey*, 279 F. App'x 35, 37 (2d Cir. May 22, 2008).

Zhang responded that his standard practice is to review each and every brief before filing, including briefs written by outside counsel on his behalf. In these two particular matters, Zhang represents that the briefs were written by an associate whom Zhang had come to trust and rely on for preparing excellent briefs. According to Zhang, because he was preoccupied with other matters, he did not review these briefs for substance as carefully as he should have. Zhang's Post-Hearing Response at 5. Zhang noted that he has taken measures to ensure that this will not happen in the future by hiring outside counsel, whose work he has full confidence in, to help prepare briefs and committing himself to personally review each and every brief filed before the Court. *Id.*

The briefs reviewed by this Committee are seriously deficient, in that they fail to

9

address central, patent, and dispositive issues. At the very least, these deficiencies posed a significant risk of prejudice to Zhang's clients. *See Bao Chen*, 265 F. App'x at 27 ("In light of the waiver of any challenge to the dispositive basis for the denial of relief, we must note that the Petitioner's brief is seriously deficient."); *Ming Fang Lin*, 279 F. App'x at 37 ("Zhang submitted a brief of poor quality that, *inter alia*, did not address the actual basis for the BIA's decision."). Zhang's failure to devote time and attention to writing and reviewing clients' briefs that were submitted to the Court evidences further failure on Zhang's part to carry out his professional responsibilities diligently and competently. *See* N.Y. Code D-R 6-101(3) ("A lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer.").

Although Zhang points to other attorneys as the authors of the defective briefs, he admits that he failed to properly supervise the work of the attorneys in his office and of the outside counsel he hired to assist with the preparation of and filing of briefs. *See* N.Y. Code D.R. 1-104(B), (C).

There are significant aggravating and mitigating circumstances here. Aggravating circumstances include (1) a pattern of negligence, involving multiple instances of misconduct; and (2) the vulnerability of Zhang's immigration clients. ABA Standards § 9.22 (c), (h). The mitigating factors present include (1) Zhang's absence of a prior disciplinary record; (2) a good faith effort to rectify the consequences of his misconduct by filing motions to reinstate those cases that were dismissed for failure to comply with the Court's scheduling orders; (3) Zhang's cooperative attitude toward these proceedings; (4) Zhang's generally good character and reputation in the immigration bar; and (5) remorse. ABA Standards § 9.32 (a), (d), (e), (g), (l). To some extent, Zhang's misconduct is mitigated by (6) the absence of a selfish motive, § 9.32 (b); but Zhang should have been cognizant that a larger caseload for his office might result in less time to devote to each client's case, including briefing and reviewing other associates' briefs.

## VI.    **Recommendation**

Based on clear and convincing evidence, the Committee finds that disciplinary action is warranted in this case based on "conduct unbecoming a member of the bar." Fed. R. App. P. 46(c). Specifically, Zhang has engaged in "conduct inimical to the administration of justice," In re Snyder, 472 U.S. 634, 645 (1985), and neglected matters entrusted to a lawyer, N.Y. Code D.R. 6-101(A)(3). The evidence in this proceeding shows that Zhang and members of his office neglected client matters, primarily through failure to file timely briefs, but also on at least two occasions through deficient briefing. In addition, Zhang repeatedly failed to formally withdraw from or stipulate to the dismissal of cases which he had in practice abandoned, thus burdening the Court with extra work, and violating the Court's scheduling orders. However, no evidence supports any finding of dishonesty or bad faith on Zhang's part; rather, Zhang's misconduct appears to be the product primarily of personal difficulties and inadequate case management. The Committee notes that there is no dispute over any fact that serves as a

10

basis for disciplinary action.

Aggravating factors are present. Zhang's conduct evidenced a pattern of negligence and resulted in a likelihood of prejudice to his vulnerable clients. There are also several mitigating factors for Zhang's conduct. In particular, Zhang clearly understood and acknowledged the significance of the problems raised in the Court's Referral Orders, and has taken substantial and apparently effective steps to respond to those problems. He is dedicated to improving his practice and to representing the interests of his clients. He has not defaulted on any briefs submitted to the Court since the Court's December 18, 2007 Referral Order. Furthermore, the Committee has found no clear evidence that Zhang knowingly or intentionally misled the Court when he filed an incorrectly completed Form C-A.

Under current circumstances, the Committee believes that a public reprimand, to recognize the severity of Zhang's past misconduct, would be sufficient sanction, together with measures to ensure Zhang's continued efforts to enhance his ability to manage his practice and fulfill his responsibilities.

Zhang's practice appears to be functioning effectively at present. However, in light of Zhang's past difficulties in managing the work of the attorneys in his office and his caseload, we recommend that he be required to attend a suitable CLE program on law office management.

In addition, Zhang should be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee a status report on the functioning of his practice, which shall include sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or is filed out of time; or (2) an application is made for permission to make a late filing only after the due date has passed. During these reporting periods, Zhang should also submit to the Committee sworn statements noting (3) any criticism of his briefing or his representation of his clients in any written order of the Court or any other tribunal. It is expected that these reports will show no such instances absent exigent circumstance, which circumstances should be attested to under oath in the respective report.

In the event that a report is not timely filed or reveals deficiencies not justified by exigent circumstance, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit, without hearing further testimony.

The following reporting periods and deadlines shall be observed. The report for each reporting period shall be mailed to the Committee Secretary within ten (10) days of the end of that reporting period. The first reporting period shall commence 10 days after

11

the Committee's recommendation is mailed to Zhang and shall end six months after the Second Circuit issues its order of disposition in this matter. Each of the three subsequent reporting period shall be for a reporting period commencing at the end of the prior reporting and ending six months later. A total of four reports will be prepared and mailed to the Committee Secretary.

22884715v7